**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **SHIRE VIROPHARMA INCORPORATED** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | NO. 17-414 |
| **CSL BEHRING LLC and CSL BEHRING GMBH** | : | **CONSOLIDATED** |
| | : | |
| | : | |
| **Defendants.** | : | |

Goldberg, J.                                                                                          August 5, 2019

**MEMORANDUM OPINION**

In this patent infringement case, Plaintiff Shire ViroPharma Incorporated ("Plaintiff") alleges that Defendants CSL Behring LLC and CSL Behring GMBH (collectively, "Defendants") have infringed four of Plaintiff's patents on drugs used for the treatment and prevention of a condition known as hereditary angioedema. Before me is a partial Motion to Dismiss seeking dismissal of allegations of infringement regarding any of the dependent claims of the four patents at issue. For the following reasons, I will deny the Motion in its entirety.

**I.    FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT**

The Second Amended Complaint alleges the following:[1]

---

[1] When determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). Thus, my recitation of the facts assumes the truth of the factual statements in the Complaint.

### A. Background

Hereditary angioedema ("HAE") is a rare genetic disorder causing insufficient natural production of functional or adequate amounts of a protein called C1 esterase inhibitor. This protein is needed to help regulate several complex processes involved in immune system function and fibrinolytic system function. Patients suffering from HAE experience symptoms including unpredictable, recurrent attacks of swelling commonly affecting the hands, feet, arms, legs, face, abdomen, tongue, genitals, and larynx. HAE may be treated by administration of a drug containing a C1 esterase inhibitor in order to restore the levels of C1 esterase inhibitor to levels sufficient to prevent or reduce the frequency or severity of HAE attacks. (Second Am. Compl. ("SAC") ¶¶ 13–14.)

Plaintiff, through its corporate affiliates, makes and sells products for the treatment of HAE, including CINRYZE, FIRAZYR, KALBITOR, and TAKHZYRO. CINRYZE has been approved by the United States Food and Drug Administration ("FDA") for routine prophylactic treatment of angioedema attacks in adolescent and adult patients with HAE, and is indicated for intravenous treatment. Both FIRAZYR and KALBITOR are approved for subcutaneous administration for treatment of acute attacks of HAE. TAKHZYRO is a subcutaneously administered monoclonal antibody indicated for prophylactic treatment of HAE that the FDA approved for commercial marketing on August 23, 2018. (Id. ¶¶ 14–19.)

### B. The Patents-in-Suit

1. The '788 Patent

On September 25, 2018, the United States Patent and Trademark Office ("PTO") issued the '788 Patent, entitled "C1-INH Compositions and Methods for the Prevention and Treatment of Disorders Associated With C1 Esterase Inhibitor Deficiency." The claims of the '788 Patent

are directed generally to a "method for prophylactic treatment of hereditary angioedema (HAE) comprising subcutaneously administering . . . a pharmaceutical composition comprising C1 esterase inhibitor, sodium citrate, and having a pH ranging from 6.5–8.0, wherein the C1 esterase inhibitor has a concentration of about 500 U/mL . . . ."  The administration of the composition "increases the level of the C1 esterase inhibitor in the blood of the subject to at least about 0.4 U/mL," and the "C1 esterase inhibitor comprises the amino acid sequence of residues 23 to 500 of SEQ ID NO: 1," which amino acid sequence is identified in the '788 Patent.  Plaintiff is the assignee and owner of all rights, title, and interest in the '788 Patent. (Id. ¶¶ 20–22.)

        2. The '423 Patent

On October 23, 2018, the PTO issued the '423 Patent, entitled "C1-INH Compositions and Methods for the Prevention and Treatment of Disorders Associated With C2 Esterase Inhibitor Deficiency."  The claims of the '423 Patent are directed generally to a "pharmaceutical composition comprising C1 esterase inhibitor, sodium citrate, and having a pH ranging from 6.5–8.0, wherein the C1 esterase inhibitor comprises the amino acid sequence of residues 23 to 500 of SEQ ID NO: 1," which amino acid sequence is identified in the '423 Patent.  Plaintiff is the assignee and owner of all rights, title, and interest in the '423 Patent. (Id. ¶¶ 23–25.)

        3. The '690 Patent

On November 20, 2018, the PTO issued the '690 Patent, entitled "C1-INH Compositions and Methods for the Prevention and Treatment of Disorders Associated With C1 Esterase Inhibitor Deficiency."  The claims of the '690 Patent are directed generally to a "pharmaceutical composition comprising C1 esterase inhibitor, sodium citrate, and having a pH ranging from 6.5–8.0, wherein the C1 esterase inhibitor has a concentration of about 400–600 U/mL, and wherein the C1 esterase inhibitor comprises the amino acid sequence of residues 23 to 500 of SEQ ID

NO: 1," which amino acid sequence is identified in the '690 Patent. Plaintiff is the assignee and owner of all rights, title and interest in the '690 Patent. (Id. ¶ 26–28.)

      4.   The '595 Patent

On February 12, 2019, the PTO issued the '595 Patent, entitled "C1-INH Compositions and Methods for the Prevention and Treatment of Disorders Associated With C1 Esterase Inhibitor Deficiency." The claims of the '595 Patent are directed generally to a "method for prophylactic treatment of hereditary angioedema (HAE) comprising subcutaneously administering . . . a pharmaceutical composition comprising C1 esterase inhibitor, sodium citrate, and having a pH ranging from 6.5–8.0, wherein the C1 esterase inhibitor has a concentration of about 400–600 U/mL . . . ." The administration of the composition "increases the level of the C1 esterase inhibitor in the blood of the subject to at least about 0.4 U/mL," and the "C1 esterase inhibitor comprises the amino acid sequence of residues 23 to 500 of SEQ ID NO: 1," which amino acid sequence is identified in the '595 Patent. Plaintiff is the assignee and owner of all rights, title, and interest in the '595 Patent. (Id. ¶¶ 29–31.)

    **C.**  **Defendants' Alleged Infringement**

On or about July 25, 2017, Defendants began U.S. sales of HAEGARDA®, a prophylactic C1 esterase inhibitor treatment for subcutaneous administration, which received FDA approval on June 22, 2017. Plaintiff alleges that Defendants' manufacture, importation, use, sale, and/or offer to sell HAEGARDA in the United States directly infringes, induces others to infringe, and/or contributorily infringes, either directly or under the doctrine of equivalents, one or more claims of Shire's '788 Patent, '423 Patent, '690 Patent, and '595 Patent. (Id. ¶¶ 32–100.)

### D. Procedural History

The procedural history of this matter is somewhat complicated. Plaintiff originally filed a patent infringement action against Defendants on April 11, 2017, alleging that Defendants' HAEGARDA product infringed Plaintiff's Patent No. 9,616,111 (the "'111 Patent"). Defendants asserted counterclaims of non-infringement and invalidity of the '111 Patent. This matter was filed under Civil Action Number 17-414.

Subsequently, on September 25, 2018, the PTO issued the '788 Patent to Plaintiff, which is a continuation of the '111 Patent. Plaintiff filed a new Complaint in this matter on the same day—under Civil Action No. 18-1476—alleging that Defendants' HAEGARDA product also infringed at least claim 1 of the '788 Patent. Subsequently, the PTO issued two other continuation applications: the '423 Patent (October 23, 2018) and the '690 Patent (November 20, 2018). Following a status conference, I issued an Order, on November 26, 2018, directing Plaintiff to file an amended complaint in Civil Action No. 18-1476.

Plaintiff filed its First Amended Complaint on January 7, 2019, alleging infringement of at least claim 1 of the '788 Patent, the '423 Patent, and the '690 Patent. The PTO then indicated that a fourth continuation patent—Patent No. 10,201,595 (the "'595 Patent")—would issue on February 12, 2019. The parties agreed that Plaintiff would file a Second Amended Complaint, on February 12, 2019, to include the '595 Patent. The Second Amended Complaint sets forth four counts of infringement, one for each of the four listed patents ('788, '423, '690, and '595). (Id. ¶¶ 101–144.) On January 24, 2019, I administratively closed Civil Action No. 18-1476 and consolidated it with the original action under Civil Action No. 17-414.

On February 26, 2019, Defendants filed the current partial Motion to Dismiss the Second Amended Complaint. Although Defendants do not seek dismissal of the infringement causes of

action as to the independent claim of each of the four patents-in-suit, they argue that Plaintiff fails to state a claim of infringement with respect to dependent claims 11–16, 19, and 27–29 of the '788 Patent, dependent claims 4–6, 14, 18, 19, and 22–28 of the '423 Patent, dependent claims 4–6, 14, 18, 19, and 22–28 of the '690 Patent, and dependent claims 11–16, 19, and 27–29 of the '595 Patent.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for

well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal, 556 U.S. at 679).

Although claims of direct infringement were previously governed by Federal Rule of Civil Procedure 84 and the Appendix of Forms, those rules were abrogated effective December 1, 2015. Raindance Techs., Inc. v. 10x Genomics, Inc., No. 15-150, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016). It is now well established that both direct and indirect infringement claims are subject to the Twombly/Iqbal standard. IP Commc'n Solutions, LLC v. Viber Media (USA) Inc., No. 16-134, 2017 WL 1312942, at *2 (D. Del. Apr. 5, 2017); RAH Color Techs LLC v. Ricoh USA Inc., 194 F. Supp. 3d 346, 350–51 (E.D. Pa. 2016).

**III.  DISCUSSION**

Defendants assert that Plaintiff fails to plead infringement of any of the various dependent claims of the '788, '423, '690, and '595 Patents. Specificallly, they contend that the Second Amended Complaint only ties specific allegations of infringement "to at least [independent] claim 1" of each of the four patents, but is devoid of facts that allow the reasonable inference that Defendants are liable for infringement of the nearly 130 other dependent claims. Plaintiff counters that the Second Amended Complaint plausibly pleads infringement of each of the four patents-in-suit.

The direct infringement of a patent occurs when a party, without authority, "makes, uses, offers to sell, or sells any patented invention, within the United States . . . ." 35 U.S.C. § 271(a). A patentee may prove direct infringement under § 271(a) either by (1) demonstrating specific

instances of direct infringement; or (2) showing that an accused device necessarily infringes on the patent. ACCO Brands, Inc. v. ABA Locks Mfrs. Co., 501 F.3d 1307, 1313 (Fed. Cir. 2007).

"Direct infringement requires a party to perform each and every step or element of a claimed method or product." BMC Res., Inc. v. Paymentech, L.P, 498 F.3d 1373, 1378 (Fed. Cir. 2007), overruled on other grounds by, 692 F.3d 1301 (Fed. Cir. 2012). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." Bayer AG v. Elan Pharm. Research Corp., 212 F.3d 1241, 1247 (Fed. Cir. 2000). If an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon. See Wahpeton Canvas Co. v. Frontier, Inc., 870 F.2d 1546, 1553 (Fed. Cir. 1989). However, "[o]ne may infringe an independent claim and not infringe a claim dependent on that claim." Monsanto Co. v. Syngenta Seeds, Inc., 503 F.3d 1352, 1359 (Fed. Cir. 2007) (internal quotations omitted). A product that does not literally infringe a patent claim may still infringe under the doctrine of equivalents if the differences between an individual limitation of the claimed invention and an element of the accused product are insubstantial. See Warner–Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 24 (1997).

Notably, "very little is required in order to plead a claim of patent infringement." Election Sys. & Software, LLC v. Smartmatic USA Corp., No. 18-1259, 2019 WL 1040541, at *1 (D. Del. Mar. 5, 2019). "[A] patent is infringed if a single claim is infringed." Grober v. Mako Prods., Inc., 686 F.3d 1335 (Fed. Cir. 2012). The United States Court of Appeals for the Federal Circuit, in Disc Disease Sols, Inc. v. VGH Sols., Inc., 888 F.3d 1256 (Fed. Cir. 2018), established the parameters for pleading patent infringement under the Iqbal/Twombly standard. The complaint in Disc Disease specifically identified the defendant's products and generally

alleged that the products met each element of at least one claim of the plaintiff's patent. Id. The plaintiff also attached the asserted patent and photographs of the accused products to the complaint. Id. On review of the defendant's motion to dismiss that complaint, the Federal Circuit reiterated the Supreme Court's statement that the "plausibility standard is met when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. at 1260 (quoting Iqbal, 556 U.S. at 678). The Court held that a general allegation that certain of defendants' products met "each and every element of at least one claim" of plaintiff's patents—without allegations specifically explaining how defendants' products infringed any asserted claim—was sufficient to plead an infringement claim generally. Id. It noted that "specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the ground upon which it rests.'" Id. (quotations omitted).

Here, the Second Amended Complaint contains four Counts, one for infringement of "at least claim 1" of each of the '788, '423, '690, and '595 Patents. The Second Amended Complaint goes on to set forth specific facts regarding the claim limitations in independent claim 1 of each of these patents and how Defendants' HAEGARDA product infringes on those limitations. It then asserts that "Defendants have infringed and continued to directly infringe one or more claims" of the various patents, under 35 U.S.C. § 271(a), all of which are based on the method of claim 1. Such claims plausibly plead infringement of a representative claim from each of the four patents-in-suit.

Defendants' argument—that Plaintiffs must also plead precisely how HAEGARDA infringes on each of the almost 130 dependent claims—attempts to impose too stringent of a pleading standard. District courts, applying the dictates of Disc Disease, have repeatedly held

9

that allegations establishing infringement of the independent claim are sufficient to encompass the dependent claims so long as the plaintiff pleads a connection between the dependent and independent claims.

For example, in Zimmer Surgical, Inc. v. Stryker Corp., No. 16-679, 2017 WL 1296026 (D. Del. Apr. 6, 2017), report and recommendation adopted in part and rejected on different grounds by 2017 WL 3736750 (D. Del. Aug. 30, 2017), the defendants moved to dismiss infringement allegations of dependent claims separately from the independent claims, arguing that the plaintiffs had not alleged sufficient factual matter to state a claim for relief for the dependent claims. Id. at *7–8. The defendant argued that plaintiffs' mere pleading of infringement of the independent claims was insufficient to plead infringement of the dependent claims. Id. at *7. The court rejected this argument, holding that that as long as the plaintiffs "make a connection between the sufficiently pled factual matter of the independent claims, and the simultaneous effect on the dependent claims," the pleading is sufficient. Id. at *8. The court deemed that standard satisfied by the plaintiffs' allegation that defendants "directly and indirectly infringe at least claims 17–23, 25–28, 30, 32–38, 40, and 41 . . . which depend from independent claims 15 and 29." Id.

Numerous other courts have similarly rejected a stricter pleading standard for dependent claims.[2] See, e.g, BioMerieux, S.A. v. Hologic, Inc., No. 18–21, 2018 WL 4603267, at *3–4 (D. Del. Sept. 25, 2018) (declining to dismiss a complaint where plaintiff identified the brand

---

[2] Indeed, "it may not be possible for a plaintiff to describe its case-in-chief with particularity at the outset of litigation, without access to the accused method, the accused apparatus for reverse engineering, or confidential data such as source code." DermaFocus LLC v. Ulthera, Inc., 201 F. Supp. 3d 465, 468 n.3 (D. Del. 2016). This is particularly true in this case where Defendants have repeatedly refused to provide Plaintiff with a sample of HAEGARDA. In other words, Defendants cannot credibly argue that Plaintiff should be held to a more detailed pleading standard while simultaneously arguing that they need not provide, in discovery, a sample of the accused product.

name and function of the accused products and described, on a limitation-by-limitation basis, how the accused products infringed only an *exemplary claim*); Align Tech., Inc. v. 3Shape A/S, 339 F. Supp. 3d 435, 444–46 (D. Del. 2018) (finding patent infringement complaint sufficient where each count of the complaint followed the same format: reciting the language of a *representative claim*, alleging that the accused products practice that claim, and providing examples demonstrating the alleged use of some aspect of the accused product performing at least some of the requirements of the representative claim); DermaFocus LLC v. Ulthera, Inc., 201 F. Supp. 3d 465, 470 (D. Del. 2016) (concluding plaintiff's allegations gave "defendant reasonable notice of a plausible claim for direct infringement of *at least independent claim 1*" of defendant's patent (emphasis added)); Morton Buildings, Inc. v. SWS Innovations, LLC, Civ. A. No. 18-1328, 2018 WL 6651527, at *1 (C.D. Ill. Dec. 19, 2018) ("Just as in Disc Disease Solutions, this Plaintiff has specified which of Defendant's products allegedly infringes on the patent, and *Plaintiff has specified an independent claim* within the patent that the [alleged infringing product] allegedly infringes." (emphasis added)).

Applying these standards, I find that the allegations here give fair notice to Defendants of the basis of the infringement claims. For each of the patents at issue, Plaintiff describes the limitations of independent claim 1 of the patent and then details—based on public information about HAEGARDA—how HAEGARDA infringes on each limitation. (Sec. Am. Compl. ¶¶ 20–100.) The Second Amended Complaint then attaches copies of each of the four patents-in-suit, as well as HAEGARDA's product label, instructions, news articles, prescribing information, and other publicly-available documents. (Id. Exs. 1–17.) Such allegations allow a reasonable

inference that Defendants are liable for the infringing conduct as to each of the four patents.[3] Plaintiff then properly connects the dependent claims to the independent claims by alleging that Defendants have infringed one or more claims of the patents-in-suit, all of which depend from independent claim 1. Plaintiff is required to do no more for the dependent claims of these patents to survive Rule 12(b)(6) scrutiny. Defendants cite no authority to support their argument that separately-pled infringement allegations for the various dependent claims of the four patents-in-suit are required at the motion to dismiss stage.[4]

Moreover, Defendants' argument is undermined by Delaware's requirement that a patentee plaintiff must file infringement contentions at the early stages of an infringement case.

---

[3] In a cursory footnote argument, Defendants suggest that Plaintiff fails to plausibly plead that Defendant directly infringes the '788 Patent because Plaintiff "cannot credibly allege that" Defendants—biopharmaceutical companies—provide treatment of HAE or administer a C2 esterase inhibitor, as required by that patent. The Second Amended Complaint, however, specifically asserts that "medical professionals and others who are [Defendants'] agents, administer HAEGARDA to HAE patients. (Sec. Am. Compl. ¶¶ 36, 54, 70, 86.) Such an allegation is sufficient as direct infringement of a method claim may be pled by alleging that the alleged infringer performed all steps of the claimed method "either personally or through another acting under his direction or control." Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc., 73 F. Supp. 3d 435, 439 (D. Del. 2014) (quoting Akamai Techs., Inc. v. Limelight Networks, Inc., 692 F.3d 1301, 1307 (Fed. Cir. 2012)).

[4] None of the cases cited by Defendants stand for the proposition that a plaintiff must specifically plead infringement of an independent and all dependent claims. See North Star Innovations, Inc. v. Micron Tech., Inc., No. 17-506, 2017 WL 5501489, at *1 (D. Del. Nov. 16, 2017) (noting that, in order to adequately allege direct infringement, plaintiff had to plead facts that plausibly indicate that the defendant's accused products practice each of the limitations found in one claim from each of the patents-in-suit; no comment about having to plead infringement for both independent and dependent claims); SIPCOm, LLC v. Streetline, Inc., No. 16-830, 2018 WL 762335, at *1 (D. Del. Feb. 7, 2018) (dismissing a complaint where plaintiff failed to plead sufficient facts to allow the court to draw a reasonable inference that defendant was liable for the infringing conduct generally; no suggestion that plaintiff had to specifically plead independent and dependent claims); Horatio Wash. Depot Techs., LLC v. TOLMAR, Inc., No. 17-1086, 2018 WL 5669168, at *11 (D. Del. Nov. 1, 2018) (dismissing infringement counts of the complaint where plaintiff had not pled facts to support infringement of either independent or dependent claims).

Specifically, the Delaware Default Standard for Discovery ¶ 4 provides, in pertinent part, that within thirty days after receipt of the defendant's core technical documents related to the accused product(s), the plaintiff "shall produce to each defendant an initial claim chart relating each accused product to the asserted claims each product allegedly infringes." Del. Default Standard ¶ 4. The Federal Circuit has recognized that the purpose of these "infringement contentions" is to require "parties to crystallize theories of the case early in the litigation . . . ." Allvoice Developments US, LLC v. Microsoft Corp., 612 F. App'x 1009, 1014 (Fed. Cir. 2015) (quotations omitted). Such infringement contentions have been deemed to obviate the need for detailed pleading as to the individual dependent claims. See BioMerieux, S.A., 2018 WL 4603267, at *3 (declining to require specificity as to each allegedly infringed claim of the patent and noting that "as a practical matter," the plaintiff "will be serving infringement contentions at an early stage in the proceedings, providing further clarity as to the charges they are asserting against Defendants.").[5]

Pursuant to the January 31, 2019 Scheduling Order in this matter, infringement contentions on the four patents-in-suit were due on March 4, 2019. (Order, ECF No. 132, ¶ 5.) Plaintiff has served those initial infringement disclosures, which set forth the limitations of the allegedly infringed independent and dependent claims of the patent-in-suit, and which detail, based upon the available information, how Defendants' HAEGARDA product infringes on each

---

[5] See also Finjan, Inc. v. ESET, LLC, No. 17-183, 2017 WL 1063475, at *2 (S.D. Cal. Mar. 21, 2017) (rejecting as moot defendant's argument that complaint failed to provide allegations as to every claim of the patent-in-suit because plaintiff had provided claim charts for each of the asserted claims); Orbcomm Inc. v. CalAmp Corp., No. 16-208, 2016 WL 3965205, at *8 (E.D. Va. July 22, 2016) (declining to require the "level of granular particularity" suggested by the defendant and noting that each side "will be required to submit a more detailed claims chart"); Palmer Hamilton, LLC v. AmTab Mfg. Corp., No. 16-522, 2016 WL 6775458, at *1 (W.D. Wisc. Nov. 15, 2016) ("Given that both sides will have to put their cards on the table relatively early in the case, motions attacking the pleadings are generally a waste of resources for the parties and the court.").

of those limitations. To require similarly detailed allegations at the pleading stage would render superfluous the requirement for an infringement chart.[6]

In short, Plaintiff's infringement allegations regarding independent claim 1 of each of the four patents-in-suit are sufficient to set forth plausible claims of infringement for each of the patent's claims depending from claim 1. Plaintiffs have since provided more detail as to their dependent claims through the service of their infringement contentions. Absent any authority requiring that these more detailed contentions be included at the pleading stage of this infringement case, I will deny the Motion to Dismiss in its entirety.

An appropriate Order follows.

---

[6] Defendants argue that, in deciding the Motion to Dismiss, I may not consider the infringement contentions because they were not filed as part of the Second Amended Complaint or attached to that pleading. Although Defendants are correct that I may not consider the substance of the infringement contentions, I may take judicial notice that such contentions were required under my scheduling order and that they have been provided as required. See Zedonis v. Lynch, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) ("Judicial opinions and docket sheets are public records, of which this court may take judicial notice . . . .").