## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SHIRE VIROPHARMA LLC,    )
    )
    )
    Plaintiff,    )
    )    C.A. No. 17-414 (MSG) (CONSOLIDATED)
    v.    )
    )
CSL BEHRING LLC and    )
CSL BEHRING GmbH,    )
    )
    Defendants.    )    REDACTED -- PUBLIC VERSION

---

## PLAINTIFF SHIRE VIROPHARMA LLC'S OPENING BRIEF IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY AND STRIKE EXPERT REPORTS

OF COUNSEL:

Eric J. Marandett
Daniel C. Winston
G. Mark Edgarton
Anita M. C. Spieth
Bryana T. McGillycuddy
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

Edgar H. Haug
HAUG PARTNERS LLP
745 Fifth Avenue, 10th Floor
New York, NY 10105
(212) 588-0800

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Derek J. Fahnestock (#4705)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
kjacobs@mnat.com
dfahnestock@mnat.com

Attorneys for Plaintiff Shire ViroPharma LLC

Original Filing Date: April 3, 2020
Redacted Filing Date: April 21, 2020

## <u>TABLE OF CONTENTS</u>

Page(s)

I.   NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.  SUMMARY OF THE ARGUMENT ............................................................................... 1

III. ARGUMENT ................................................................................................................... 2

   A.   Applicable Law ....................................................................................................... 2

   B.   Mr. Scott Lassman, CSL's Purported FDA Expert, Impermissibly
        Opines About the State of Mind, Intent, and Motives of Shire and its
        Employees ............................................................................................................... 3

   C.   Opinions of CSL's Physician Expert, Dr. Timothy Craig, Require
        Exclusion ................................................................................................................. 6

        1.   Dr. Craig's Infringement Analysis (Responsive Report ¶¶ 4, 18-23
             & Attachment A) Is Devoid of Scientific Validity .................................... 6

             a.   Dr. Craig Applies No "Methodology" for Determining
                  Infringement ................................................................................... 6

             b.   Dr. Craig's "Methodology" for Calculating Infringement Is
                  Not Scientifically Valid or Useful ................................................. 8

             c.   Dr. Craig Lacks Basic Familiarity with His Own Analysis
                  & Methods ..................................................................................... 10

        2.   Dr. Craig Provides Impermissible Opinions Outside of the Scope
             of his Expertise ........................................................................................ 12

             a.   Dr. Craig May Not Offer Expert Opinion Regarding the
                  Obviousness of the Claimed Compositions Because He
                  Lacks Knowledge Regarding the Prior Art He Relies On
                  (Opening Report ¶¶ 168-217; Reply Report ¶¶ 121-134;
                  Suppl. Report ¶ 15) ...................................................................... 12

             b.   Dr. Craig May Not Offer Expert Opinions from the
                  Perspective of an Attorney (Responsive Report ¶¶ 6, 24-25) ....... 13

█████████████████████████

        c.      Dr. Craig Cannot Offer Opinions on Market Share (Responsive Report ¶ 11) ................................................................ 14

D.     CSL's Formulation Expert Dr. Lisbeth Illum Cannot Offer Improper Legal Opinions Outside Her Area of Expertise .................................................. 15

E.     The Opinions of Nicholas Godici, CSL's Expert on Inequitable Conduct, Should Be Excluded in Their Entirety ................................................ 16

     1.    Mr. Godici's Report Is a Legal Framework Disguised as Expert Opinion (Opening Report ¶¶ 48-55 & 108-158) ...................................... 17

     2.    Mr. Godici's Opinions Impermissibly Undermine the Presumption of Validity (Opening Report ¶¶ 20-22, 36, 155) ...................................... 19

     3.    Mr. Godici's Testimony Regarding PTO Procedures Will Not Assist the Court as Trier of Fact (Opening Report ¶¶ 17-47) .................. 20

     4.    Mr. Godici's Summary of The File Histories Is Not Helpful (Opening Report ¶¶ 56-107) ..................................................... 21

F.     Dr. Christine Meyer's Opinions Are Not Based on Sufficient Facts or Data ...................................................................................... 22

IV.    CONCLUSION ............................................................................. 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Med. Optics, Inc. v. Alcon Inc.*,
    C.A. No. 03-1095-KAJ, 2005 U.S. Dist. LEXIS 5803 (D. Del. Apr. 7, 2005) ............... *passim*

*Am. Cruise Lines v. HMS Am. Queen Steamboat Co.*,
    No. 13-cv-324-RGA, 2017 U.S. Dist. LEXIS 130430 (D. Del. Aug. 16, 2017) ......................6

*AstraZeneca UK Ltd., IPR v. Watson Labs., Inc. (NV)*,
    C.A. No. 10-915-LPS, 2012 WL 6043266 (D. Del. Nov. 14, 2012) ...........................16, 17, 20

*B. Braun Melsungen AG v. Teramo Med. Corp.*,
    749 F. Supp. 2d 210 (D. Del. 2010)....................................................................................22

*Barry v. Medtronic, Inc.*,
    No.1:14-cv-104 (E.D. Tex. Sept. 21, 2016)........................................................................18

*Bausch & Lomb, Inc. v. Alcon Labs., Inc.*,
    79 F. Supp. 2d 252 (W.D.N.Y. 2000) ........................................................................2, 20, 21

*Berckeley Inv. Group v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006).........................................................................................14, 15, 16

*Bridgestone Sports Co. Ltd v. Acushnet Co.*,
    No. 05-132-JJF, 2007 U.S. Dist. LEXIS 11380 (D. Del. Feb. 15, 2007) ...............................22

*Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*,
    No. 08-464, 2010 U.S. Dist. LEXIS 995598 (D. Del. Sept. 21, 2010)...................................21

*Bruno v. Bozzuto's, Inc.*,
    311 F.R.D. 124 (M.D. Pa. 2015)............................................................................................11

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
    350 F.3d 316 (Fed. Cir. 2003)......................................................................................3, 4, 16

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l*,
    350 F. Supp. 2d 582 (D. Del. 2004)...............................................................................24, 25

*Comm. Scientific and Indus. Research Org. v. Mediatek Inc.*,
    No. 6:12-cv-00578-RWS, 2015 WL 12806515 (E.D. Tex. June 29, 2015) ...........................20

*Corning Inc. v. SRU Biosystems*,
    C.A. No. 03-633 JJF, 2004 WL 5523178 (D. Del. Nov. 5, 2004) ..........................................20

*Cryovac Inc. v. Pechiney Plastic Pkg'ing, Inc.*,
430 F. Supp. 2d 346 (D. Del. 2006)...........................................................................2, 15, 16

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)...............................................................................................8, 9, 10

*In re Diet Drugs Prods. Liab. Litig.*,
MDL Dkt. No. 1203, 2001 U.S. Dist. LEXIS 1174 (E.D. Pa. Feb. 1, 2001)..........................13

*Dow Chem. Can., Inc. v. HRD Corp.*,
656 F. Supp. 2d 427 (D. Del. 2009)......................................................................................16

*Elcock v. Kmart Corp.*,
233 F.3d 734 (3d Cir. 2000)............................................................................................3, 16

*F'real Foods LLC v. Hamilton Beach Brands, Inc*.,
No. 16-41-CFC, 2019 U.S. Dist. LEXIS 62202 (D. Del. Apr. 11, 2019)................................21

*Greatbatch Ltd. v. AVX Corp.*,
No. 13-723-LPS, 2017 U.S. Dist. LXIS 113316 (D. Del. July 2, 2017) ............................1, 4

*Institut Pasteur v. Simon*,
No. 98-727, 2005 U.S. Dist. LEXIS 17154 (E.D. Pa. Aug. 16, 2005) ............................15, 16

*Johns Hopkins Univ. v. Alcon Labs., Inc.*,
C.A. No. 15-525-SLR-SRF, 2018 U.S. Dist. LEXIS 70403 (D. Del. Mar. 1,
2018) ...................................................................................................................................13

*Junker v. Med. Components, Inc.*,
No. 13-4606, 2019 U.S. Dist. LEXIS 1530 (E.D. Pa. Jan. 4, 2019)......................................15

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)..............................................................................................................25

*Lannett Co. v. Kv Pharm.*,
No. 08-338-JJF, 2009 U.S. Dist. LEXIS 134178 (D. Del. Mar. 9, 2009) ..............................17

*Legendary Art, LLC v. Godard*,
No. 11-0674, 2012 U.S. Dist. LEXIS 116270 (E.D. Pa. Aug. 17, 2012) ...............................24

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
559 F.2d 894 (3d Cir. 1977), overruled on other grounds by *Goodman v.
Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985).......................................................................22

*Montgomery County v. Microvote Corp*.,
320 F.3d 440 (3d Cir. 2003)............................................................................................11, 24

*Mosaid Techs. Inc. v. LSI Corp.*,
   2014 U.S. Dist. LEXIS 25840 (D. Del. Feb. 28, 2014) ..........................................................24

*Oxford Gene Tech. v. Mergen Ltd.*,
   345 F. Supp. 2d 431 (D. Del. 2004) ........................................................................................4

*Power Integ., Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   763 F. Supp. 2d 671 (D. Del. 2010) ......................................................................................18

*In re Rosuvastatin Calcium Patent Litig.*,
   Civ. No. 07-805-JFF-LPS, 2009 U.S. Dist. LEXIS 117355 (D. Del. Dec. 11,
   2009) ..........................................................................................................................................4

*St. Jude Medical, et al. v. Volcano Corp.*,
   No. 10-631-RGA (D. Del. June 15, 2012) ........................................................................19, 21

*Therasense Inc. v. Becton, Dickinson and Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) (en banc) ............................................................................17

*In re TMI Litig.*,
   193 F.3d 613 (3d Cir. 1999) ..................................................................................................24

*USX Corp. v. Adriatic Ins. Co.*,
   99 F. Supp. 2d 593 (W.D. Pa. 2000) ....................................................................................15

*W.L. Gore & Assoc. v. C.R. Bard, Inc.*,
   No. 11-515, 2015 WL 12815314 (D. Del. Nov. 20, 2015) ...................................17, 19, 20, 21

*Whitewater West Indus. v. Pac. Surf Designs, Inc.*,
   No. 3:17-01118-BEN, 2019 U.S. Dist. LEXIS 86340 (S.D. Cal. May 22,
   2019) ........................................................................................................................................18

*Wisconsin Alumni Research Foundation v. IBM Corp.*,
   04-C-867-C, 2005 U.S. Dist. LEXIS 36845 (W.D. Wis. Aug. 29, 2005) ..............................17

*Zimmer Surgical v. Stryker Corp.*,
   365 F. Supp. 3d 466 (D. Del. 2019) ........................................................................................5

**Statutes**

35 U.S.C. § 101-103 ........................................................................................................................1

35 U.S.C. § 112 ................................................................................................................................1

35 U.S.C. § 282 ..............................................................................................................................19

**Other Authorities**

Federal Rule of Evidence 702 .................................................................................. *passim*

Federal Rule of Evidence 704 .......................................................................................15

Gatlin, et al., *Formulation and Administration Techniques to Minimize Injection
    Pain and Tissue Damage Associated with Parenteral Products*, Chapter 17 in
    INJECTABLE DRUG DEVELOPMENT TECHNIQUES TO REDUCE PAIN AND
    IRRITATION 401 (P.K. Gupta & G.A. Brazeau, eds. CRC Press 1999) .......................12, 13, 14

Pawaskar, et al., *Population Pharmacokinetics of Subcutaneous C1-Inhibitor for
    Prevention of Attacks in Patients with Hereditary Angioedema*, 48 Clin. Exp.
    Allergy. 1325 (2018) .............................................................................................7

███████████████████████████

## List of Terms

| | | |
|---|---|---|
| "Shire" | Shire ViroPharma LLC | |
| "CSL" | CSL Behring and CSL Behring GmbH | |
| "'111 patent" | U.S. Patent No. 9,616,111 | |
| "'788 patent" | U.S. Patent No. 10,080,788 | |
| "'423 patent" | U.S. Patent No. 10,105,423 | |
| "Asserted Patents" | U.S. Patent Nos. 9,616,111, 10,080,788, and 10,105,423 | |
| "Lassman Report" | Expert Report of Scott M. Lassman (Dec. 10, 2019) | **Ex. A** |
| "PTO" | U.S. Patent and Trademark Office | |
| "Craig Responsive Report" | Responsive Expert Report of Timothy Craig, D.O. on the Issue of Infringement (Dec. 10, 2019) | **Ex. B** |
| "Craig Opening Report" | Opening Report of Timothy Craig, D.O. on the Issue of Invalidity (Oct. 31, 2019) | **Ex. C** |
| "Craig Reply Report" | Reply Expert Report of Timothy Craig, D.O. on the Issue of Invalidity (Jan. 23, 2020) | **Ex. D** |
| "Craig Suppl. Report" | Supplemental Expert Report of Timothy Craig, D.O. on the Issues of Invalidity (Feb. 25, 2020) | **Ex. E** |
| "Illum Opening Report" | Opening Expert Report of Lisbeth Illum, Ph.D. on the Issue of Invalidity (Nov. 1, 2019) | **Ex. F** |
| "Illum Reply Report" | Reply Expert Report of Lisbeth Illum Ph.D. on the Issue of Invalidity (Jan. 23, 2020) | **Ex. G** |
| "Godici Opening Report" | Opening Expert Report of Nicholas P. Godici (Nov. 1, 2019) | **Ex. H** |
| "Godici Reply Report" | Reply Expert Report of Nicolas P. Godici (Jan. 23, 2020) | **Ex. I** |

| | | |
|---|---|---|
| "Meyer Report" | Expert Report of Christine S. Meyer, Ph.D. (Dec. 10, 2019) | **Ex. J** |
| "ODE" | Orphan Drug Exclusivity | |
| "Lassman Tr." | Deposition Transcript of Prescott M. Lassman (Feb. 13, 2020) | **Ex. K** |
| | ██████████████████████████ | **Ex. L** |
| "Craig Tr." | Deposition Transcript of Timothy Craig, D.O. (Mar. 6, 2020) | **Ex. M** |
| "HAEGARDA Website" | HAEGARDA Website, available at: https://www.haegarda.com/hcp/subcutaneous-C1-INH (last visited Oct. 8, 2019) (Shire_0714416) | **Ex. N** |
| | Pawaskar, et al., *Population Pharmacokinetics of Subcutaneous C1-Inhibitor for Prevention of Attacks in Patients with Hereditary Angioedema*, 48 Clin. Exp. Allergy. 1325 (2018) (Shire_0813829) | **Ex. O** |
| "Gatlin" | Gatlin, et al., *Formulation and Administration Techniques to Minimize Injection Pain and Tissue Damage Associated with Parenteral Products*, Chapter 17 in INJECTABLE DRUG DEVELOPMENT TECHNIQUES TO REDUCE PAIN AND IRRITATION 401 (P.K. Gupta & G.A. Brazeau, eds. CRC Press 1999)  (CSLHAE00132509) | **Ex. P** |
| "SPNN" | Specialty Pharmacy Nursing Network | |
| "Sanquin" | Stichting Sanquin Bloedvoorziening or Sanquin Blood Supply Foundation | |
| | ██████████████████████████ | **Ex. Q** |
| "Illum Tr." | Deposition Transcript of Lisbeth Illum (Jan. 31, 2020) | **Ex. R** |
| | *In Limine* Order Granting Defendant Medtronic's Motion to Exclude the Testimony of Nicholas Godici, *Barry v. Medtronic, Inc.*, No.1:14-cv-104 (E.D. Tex. Sept. 21, 2016) | **Ex. S** |
| "Godici Tr." | Deposition Transcript of Nicholas P. Godici (Jan. 30, 2020) | **Ex. T** |
| | Order, *St. Jude Medical, et al. v. Volcano Corp.*, No. 10-631-RGA (D. Del. June 15, 2012) | **Ex. U** |
| "Meyer Tr." | Deposition Transcript of Christine S. Meyer, Ph.D. (Mar. 12, 2020) | **Ex. V** |

████████████████████

| ████ | ████████ | |
|---|---|---|
| ██████████ | ██████████████████████ | |
| "Groeling Tr." | Deposition Transcript of Thomas Groeling (Jul. 31, 2019) | **Ex. W** |
| "August 2019 Emails" | Email correspondence between counsel for Shire and counsel for CSL (Aug. 2019) | **Ex. X** |
| "December 2019 – January 2020 Emails" | Email correspondence between counsel for Shire and counsel for CSL (Dec. 2019-Jan. 2020) | **Ex. Y** |

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Shire alleges that CSL directly and indirectly infringes certain Shire patents[1] through CSL's manufacture, importation, use, sale, and/or offer to sell its marketed biologic product, Haegarda.  CSL denies infringement and alleges that the Asserted Patents are invalid under 35 U.S.C. §§ 101-103 and 112, and unenforceable due to purported inequitable conduct during prosecution.  The parties have requested that this case be tried to a jury (to the extent a jury right is implicated).  The Court has not yet set a trial date.

Fact and expert discovery are complete.  D.I. 125, 238.  Pursuant to the Court's scheduling orders, on March 25, 2020 Shire requested leave to file a motion for summary judgment.  D.I. 132, 226, 245.  Shire now moves to preclude certain of CSL's experts from offering inadmissible testimony and to strike portions of their expert reports.

## II.      SUMMARY OF THE ARGUMENT

Five of CSL's retained experts offer purported expert opinions that are inadmissible under Federal Rule of Evidence 702 and applicable law.  Shire moves to strike the inadmissible portions of each expert's reports and preclude CSL's experts from offering such opinions for summary judgment or at trial.

**Mr. Scott Lassman** should not be permitted to offer purely speculative opinions regarding Shire's corporate intent, ostensibly related to damages, because he has no expertise on Shire's intent, motive, and state of mind and his opinions are "improper legal conclusions based on unscientific interpretation" and are "not a proper topic for expert testimony."  *Greatbatch Ltd. v. AVX Corp.*, No. 13-723-LPS, 2017 U.S. Dist. LXIS 113316, at *6 (D. Del. July 2, 2017).

---

[1]  U.S. Patent Nos. 9,616,111 ("the '111 patent"); 10,080,788 ("the '788 patent"); and 10,105,423 ("the '423 patent") (collectively, the "Asserted Patents").

█████████████████████████████████

**Dr. Timothy Craig, D.O.**, should not be permitted to offer opinions regarding infringement of the "at least about 0.4 U/mL" blood level limitations, because his methodology is unscientific, ████████████████████████████████████████████████████. The opinions he offers regarding pharmaceutical formulation, legal conclusions, and economics also should be excluded because he – as a physician – lacks the relevant expertise.

**Dr. Lisbeth Illum, Ph.D.**, who purports to be an expert on pharmaceutical formulation, should not be permitted to offer legal opinions regarding inventorship/ownership of the Asserted Patents as "[expert] testimony on substantive areas of patent or contract law is impermissible." *Cryovac Inc. v. Pechiney Plastic Pkg'ing, Inc.*, 430 F. Supp. 2d 346, 364 (D. Del. 2006).

**Mr. Nicholas Godici** should be barred from offering legal opinions and framework regarding CSL's inequitable conduct claim.  Nor may he offer testimony that impermissibly "undermines the presumption of [the Asserted Patents'] validity." *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 79 F. Supp. 2d 252, 256 (W.D.N.Y. 2000).  His further opinions summarizing the file histories of the Asserted Patents and summarizing (largely irrelevant) PTO practices and procedures should also be excluded as unhelpful to the Court.

Lastly, CSL's damages expert, **Dr. Christine Meyer, Ph.D.**, should not be permitted to offer opinions that rely on unverified and unsupported sales data.

## III.   ARGUMENT

### A.   Applicable Law

Courts permit expert testimony only if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  Expert testimony should be excluded if it lacks any

█████████████████████████████████████████

of "three distinct substantive" requirements: "qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

"Qualifications" require that the expert "possess specialized expertise" on the subject of the expert opinion. *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (Fed. Cir. 2003). "Reliability" requires that the expert's opinion be "based on the method and procedures of science rather than on subjective belief of unsupported speculation." *Id.* "Fit" requires that the testimony be "relevant for the purposes of the case and must assist the trier of fact." *Id.* CSL's experts all advance opinions that fail to meet one or more of these requirements.

**B.     Mr. Scott Lassman, CSL's Purported FDA Expert, Impermissibly Opines About the State of Mind, Intent, and Motives of Shire and its Employees.**

CSL retained Mr. Lassman to respond to the opinions put forth by Shire's FDA expert, Suzanne Sensabaugh. ████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████[2] Ms. Sensabaugh provides these opinions from an objective perspective, relying on three decades of experience working at FDA and in the pharmaceutical industry. ███████████████████████████████████

██████████████████████████████████████████, ███████████████████████

██████████████████████████████████████████████████████

████████ Mr. Lassman, however, is an attorney who never worked at FDA or for a pharmaceutical company (let alone Shire) and has no specialized knowledge to interpret Shire's state of mind or

---

[2] SHP616 was a subcutaneous C1-INH product that Shire was developing for the prophylactic treatment of HAE, before CSL launched Haegarda. ██████████████████████████ ██████████████████████████████████████████████████ In reaching her opinions, Ms. Sensabaugh relies on Shire's development progress, milestones, and interactions with FDA as of Haegarda's launch date. ████████████████████████████ ██████████████████████████████████████████

███████████████████████████

motivations.  His statements and purported opinions (¶¶ 11-13, 37-57, 60, 63, and 65) thus fail to meet the Third Circuit's "qualifications," "fit," and "reliability" requirements.  *Calhoun*, 350 F.3d at 321.  They also invade the province of the jury as fact-finder.

███████████████████████████

███████████████████████████

███████████████████████████

███████████████    Ex. A, Lassman Report ¶ 11.[3]  This type of testimony regarding a party's "intent, motive, or state of mind, or evidence by which such state of mind may be inferred," is routinely excluded by Delaware courts.  *See Oxford Gene Tech. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 (D. Del. 2004).  In particular, opinions "on the state of mind and intent of [a corporation] and/or its employees" are "improper legal conclusions based on unscientific interpretation" and are "not a proper topic for expert testimony."  *Greatbatch*, 2017 U.S. Dist. LXIS 113316, at *6; *see also In re Rosuvastatin Calcium Patent Litig.*, Civ. No. 07-805-JFF-LPS, 2009 U.S. Dist. LEXIS 117355, at *33 (D. Del. Dec. 11, 2009) (experts are "not permitted to draw inferences from the underlying facts or opine with respect to the intent of [parties].")

███████████████████████████

•  ███████████████████████████
   ███████████████████████

———————————————

3 ███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████



Ex. A, Lassman Report ¶¶ 40, 42, 44, 47 (emphasis added).

*See id.* ¶¶ 48-57.  For example, he opines:

*Id.* ¶¶ 48-49, 53 (emphasis added).

*See also id.* ¶ 12, 57.[4]

Mr. Lassman's interpretation of Shire's intent, views, expectations, perceptions, conclusions, and beliefs (using Mr. Lassman's words), and on subjects on which he has no expertise, are precisely the types of "opinions" this court routinely excludes as inadmissible under Rule 702.  *E.g.*, *Zimmer Surgical v. Stryker Corp.*, 365 F. Supp. 3d 466, 500 (D. Del. 2019)

[4]



("testimony on state of mind and intent" is "clear[ly] improper"); *Am. Cruise Lines v. HMS Am. Queen Steamboat Co.*, No. 13-cv-324-RGA, 2017 U.S. Dist. LEXIS 130430, at *12 (D. Del. Aug. 16, 2017).

### C. Opinions of CSL's Physician Expert, Dr. Timothy Craig, Require Exclusion.

Dr. Timothy Craig is a medical doctor retained by CSL ████████████████████ ████████████████████████████████████████████████  Each of Dr. Craig's four reports contains opinions that violate the Third Circuit's qualifications, reliability, and fit requirements, and impermissibly invade the province of the fact-finder.  Ex. C, Craig Opening Report; Ex. B, Craig Responsive Report; Ex. D, Craig Reply Report; Ex. E, Craig Suppl. Report.

#### 1. Dr. Craig's Infringement Analysis (Responsive Report ¶¶ 4, 18-23 & Attachment A) Is Devoid of Scientific Validity.

The claims of the Asserted Patents require an "increase[]" in the "level of C1 esterase inhibitor in the blood of the subject to at least about 0.4 U/mL."  *See, e.g.*, '111 patent, claim 1.

████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████.  For the following reasons, Dr. Craig should be precluded from offering his infringement analysis as described in ¶¶ 4, 18-23, and Attachment A of his Responsive Report.

##### a. Dr. Craig Applies No "Methodology" for Determining Infringement.

Shire's infringement analysis relies in part on pharmacokinetic[5] data from CSL's clinical trials to show that patients who take Haegarda achieve blood levels of "at least about 0.4 U/mL." CSL has extensively analyzed, simulated, and modeled this clinical data to determine the

---

[5] "Pharmacokinetics" refers to the movement of a pharmaceutical product through the subject's body and, in this case, blood stream.

██████████████████████████████████████

pharmacokinetic parameters of Haegarda and relied upon it to make conclusions regarding C1-INH levels that the Haegarda patient population is expected to achieve.  CSL submitted this data to the FDA to obtain approval, published it in peer-reviewed journals, touted it in CSL's promotional materials to patients, and includes it in the Haegarda Prescribing Information.  *See, e.g.*, Haegarda Website, Ex. N.  Dr. Craig's infringement analysis, however, ignores these data and adopts an unscientific approach to conclude that patients do not *always* achieve the claimed blood levels for each and every administered dose of Haegarda.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████    ██████████████████

████████████████████████████████████████████

██████████████████████████████████; Ex. N, Haegarda Website; Ex. O, Pawaskar, et al., *Population Pharmacokinetics of Subcutaneous C1-Inhibitor*, 48

Clin. Exp. Allergy. 1325 (2018).

     b. *Dr. Craig's "Methodology" for Calculating Infringement Is Not Scientifically Valid or Useful.*

Federal Rule of Evidence 702 "clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). When considering expert testimony, courts first assess "whether the reasoning or methodology underlying the testimony is scientifically valid" and "whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. Expert testimony must "'fit' the issues in the case by having a 'valid scientific connection to the pertinent inquiry.'" *Advanced Med. Optics, Inc. v. Alcon Inc.*, C.A. No. 03-1095-KAJ, 2005 U.S. Dist. LEXIS 5803, at *4 (D. Del. Apr. 7, 2005) (citing *Daubert*, 509 U.S. at 591-92). Dr. Craig's infringement analysis contains at least three substantive flaws that render it inadmissible.

First, Dr. Craig's analysis does not accurately reflect how C1-INH builds and is maintained in the blood of a patient, as represented by CSL itself. As shown in Haegarda promotional material (below, left), after subcutaneous administration of Haegarda, C1-INH levels gradually rise and fall before the next subcutaneous dose, creating a "scalloped" dose response pattern that ███████



Haegarda Website (Ex. N).       Ex. B, Craig Responsive Report, p. 13



CSL—and Dr. Craig himself—published similar graphs showing "scalloped" C1-INH levels following Haegarda administration in peer-reviewed journals.  *See, e.g.*, Ex. O, Pawaskar, et al., *Population Pharmacokinetics of Subcutaneous C1-Inhibitor*, 48 Clin. Exp. Allergy. 1325 (2018).[6]

Second, Dr. Craig's opinion is inconsistent with this Court's claim construction.  The claims of the Asserted Patents do not require that a subject reach the claimed blood levels of "at

---

[6]  "[S]ubmission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected. …The fact of publication (or lack thereof) in a peer reviewed journal thus will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised."  *Daubert*, 509 U.S. at 593-94 (citations omitted).

[7]



least about 0.4 U/mL" for any particular duration.  Blood levels must simply reach "at least about 0.4 U/mL" any time "after administration of the composition."  *See* D.I. 238, p. 2.  The blood level increase to "at least about 0.4 U/mL" need not take place prior to the subsequent dose.  Thus, Dr. Craig's analysis is improper because it conflicts with this Court's claim construction.  It therefore would not be helpful to, and in fact would mislead, the jury.

Information about C1-INH blood levels taken *prior to* administration of Haegarda does not and cannot inform on the "pertinent inquiry"—whether ***administering*** Haegarda increases C1-INH levels as claimed by the Shire patents.

Dr. Craig's non-infringement analysis therefore will not assist the fact-finder and should be excluded entirely.  *Advanced Med.*, 2005 U.S. Dist. LEXIS 5803 at *4 (expert testimony must "'fit' the issues in the case by having a 'valid scientific connection to the pertinent inquiry'").

       *c.*  *Dr. Craig Lacks Basic Familiarity with His Own Analysis & Methods.*

Dr. Craig's non-infringement opinions also fail to meet Rule 702's "reliability" requirement because they are not based on reliable principles and methodology.  *See Daubert*, 509 U.S. at 595.



This is not correct.

Where a witness did not create his own data and does not know "who created it, or how it was created," that expert fails to meet the "reliability" requirement of Rule 702.  *Montgomery County v. Microvote Corp.*, 320 F.3d 440, 448-49 (3d Cir. 2003); *see also Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 138 (M.D. Pa. 2015) ("[E]xperts who use data in their reports without independently verifying the accuracy or reliability of those figures fail to satisfy this Circuit's reliability requirement.").[8]

8

████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

### 2.     Dr. Craig Provides Impermissible Opinions Outside of the Scope of his Expertise.

Dr. Craig is a Doctor of Osteopathic Medicine whose relevant experience includes

█████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████ They should be excluded as set forth below for

failure to meet the "qualifications" requirement of Rule 702. *Advanced Med.*, 2005 U.S. Dist.

LEXIS 5803 at *5 ("Expert testimony can only be received from someone who has specialized

knowledge or training sufficient to qualify him to opine on an issue within his field of expertise,

and the expert's opinion must be confined to that field.").

> *a.  Dr. Craig May Not Offer Expert Opinion Regarding the Obviousness of the Claimed Compositions Because He Lacks Knowledge Regarding the Prior Art He Relies On (Opening Report ¶¶ 168-217; Reply Report ¶¶ 121-134; Suppl. Report ¶ 15).*

In Section X of Dr. Craig's Opening Report, he opines that the inventions claimed in the

Asserted Patents would have been obvious in view of the combination of two prior art references

– the *Schranz Poster* and *Gatlin*.  He reiterates the same arguments in his Reply Report, Section

VIII, and in paragraph 15 of his Supplemental Report, referring to *Gatlin* no fewer than forty times

throughout his opinions.  Ex. D, Craig Reply Report Heading VIII; *see also* Ex. C, Craig Opening

Report ¶¶ 168-217; Ex. D, Craig Reply Report ¶¶ 121-134; Ex. E, Craig Suppl. Report ¶ 15.  *Gatlin*

is a chapter in a formulation textbook that generally describes techniques to reduce pain and

irritation when formulating injectable drugs.  *See* Ex. P. ██████████████████



, is a clear failure to satisfy the "reliability" and "qualifications" requirements of Rule 702.  *See Johns Hopkins Univ. v. Alcon Labs., Inc.*, C.A. No. 15-525-SLR-SRF, 2018 U.S. Dist. LEXIS 70403, at *18 (D. Del. Mar. 1, 2018), *adopted by* 2018 U.S. Dist. LEXIS 69403 (D. Del. Apr. 25, 2018) (excluding expert opinion for failure to review underlying documents); *see also In re Diet Drugs Prods. Liab. Litig.*, MDL Dkt. No. 1203, 2001 U.S. Dist. LEXIS 1174, at *63 (E.D. Pa. Feb. 1, 2001) (excluding expert's opinion relying on a document that she did not review and about which she had no subject matter expertise).

      *b.   Dr. Craig May Not Offer Expert Opinions from the Perspective of an Attorney (Responsive Report ¶¶ 6, 24-25).*

███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ These opinions should be excluded for several reasons.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ *see also Advanced Med.*, 2005 U.S. Dist. LEXIS 5803 at *3-4. █████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████ Even if Dr. Craig were qualified to offer a legal opinion (which he plainly is not), it would be impermissible because SPNN's agency relationship with CSL is a question of law. *See Berckeley Inv. Group v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) ("[A]n expert witness is prohibited from rendering a legal opinion . . . because it would usurp the District Court's pivotal role in explaining the law to the jury.") (citations omitted).

        *c.* *Dr. Craig Cannot Offer Opinions on Market Share (Responsive Report ¶ 11).*

Finally, Dr. Craig provides an opinion in paragraph 11 of his Responsive Report attempting to rebut Shire's damages claims. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ Although Dr. Craig may have personal knowledge of the treatment landscape of his own patients, he is not an economist nor is he an expert in the HAE market at large.  In a factually similar case, where a medical doctor attempted to opine on market trends for products in his area

---

9 ████████████████████████████████████████████████████████

███████████████████████████

██████████████████████████████████████

of treating expertise, this court precluded his testimony, finding that a doctor is not an expert on

market trends for a treatment area simply by virtue of being an "expert consumer" of those

treatments. *Advanced Med.*, 2005 U.S. Dist. LEXIS 5803 at *9.

**D.    CSL's Formulation Expert Dr. Lisbeth Illum Cannot Offer Improper Legal Opinions Outside Her Area of Expertise.**

CSL retained Dr. Lisbeth Illum to provide opinions regarding pharmaceutical product

formulation.  Dr. Illum goes beyond her area of expertise, however, in offering legal opinions

regarding inventorship and ownership of the Asserted Patents.   More specifically, ████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████ Ex. F, Illum Opening Report ¶ 15; *see also id.* ¶ 339.[10]

████████████████████████████████████████████████████

████████████████████████████████████

As a threshold matter, "[expert] testimony on substantive areas of patent or contract law is

impermissible."  *Cryovac*, 430 F. Supp. 2d at 364.  Inventorship and contract interpretation both

present questions of law.  *See, e.g., Junker v. Med. Components, Inc.*, No. 13-4606, 2019 U.S. Dist.

LEXIS 1530, at *28-29 (E.D. Pa. Jan. 4, 2019); *USX Corp. v. Adriatic Ins. Co.*, 99 F. Supp. 2d

593, 609 (W.D. Pa. 2000).  Moreover, while expert testimony may "embrace[] an ultimate issue"

(Fed. R. Evid. 704), an expert "is prohibited from rendering a legal opinion."  *Berckeley*, 455 F.3d

at 217.  Therefore, the Court should preclude Dr. Illum from offering legal opinions with respect

to proper inventorship and ownership of the Asserted Patents.  *See, e.g., Institut Pasteur v. Simon*,

---

[10] ████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████

███████████████████████████████

No. 98-727, 2005 U.S. Dist. LEXIS 17154, at *2-4 (E.D. Pa. Aug. 16, 2005) (barring expert

testimony about defendant's "inventive contributions" and that defendant "should have been listed

as a co-inventor"); *Dow Chem. Can., Inc. v. HRD Corp.*, 656 F. Supp. 2d 427, 435-36 (D. Del.

2009) (striking expert testimony regarding "legal duties, standards or ramifications arising from a

contract," including intellectual property rights); *Cryovac*, 430 F. Supp. 2d at 365.

Moreover, even were such opinions proper, Dr. Illum is not qualified to testify about

inventorship or contract interpretation. Dr. Illum is a formulation scientist with no legal training

and therefore lacks "'specialized knowledge' regarding the area of testimony." *Elcock*, 233 F.3d

at 741 (quotations omitted); *see* Ex. F, Illum Opening Report ¶¶ 1-4 (providing Dr. Illum's

background and qualifications); *id.* at App'x A (Dr. Illum's CV); Ex. R, Illum Tr. 10:18-22,

136:15. Dr. Illum's legal conclusions on inventorship and ownership, found in ¶¶ 15 and 338-42

of her Opening Report and ¶¶ 177-80 of her Reply Report, are improper and should be excluded.

*See, e.g.*, *Institut Pasteur*, 2005 U.S. Dist. LEXIS 17154, at *2-4; *Calhoun*, 350 F.3d at 323.

### E. The Opinions of Nicholas Godici, CSL's Expert on Inequitable Conduct, Should Be Excluded in Their Entirety.

The Court should strike entirely the Opening and Reply Reports and preclude the testimony

of CSL's expert, Nicholas Godici. Mr. Godici – a former patent examiner and PTO Commissioner

– offers opinions related to CSL's counterclaim of inequitable conduct. ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Such "opinions" are improper and unhelpful to the Court. *See Berckeley*, 455 F.3d at 217 ("the

District Court must ensure that an expert does not testify as to the governing law of the case");

*AstraZeneca UK Ltd., IPR v. Watson Labs., Inc. (NV)*, C.A. No. 10-915-LPS, 2012 WL 6043266,

at *3 (D. Del. Nov. 14, 2012) (excluding testimony regarding "procedures at the PTO[,] determining that it "w[ould] not be helpful to the Court").  Indeed, "the judges in this District have a well-established practice of excluding expert testimony of legal experts."  *AstraZeneca*, 2012 WL 6043266, at *2.  The court "has a strong and consistent view" that "the testimony of 'patent law experts'" is "routinely exclude[d]."  *W.L. Gore & Assoc. v. C.R. Bard, Inc.*, No. 11-515, 2015 WL 12815314, at *4 (D. Del. Nov. 20, 2015) (collecting cases).

### 1.   Mr. Godici's Report Is a Legal Framework Disguised as Expert Opinion (Opening Report ¶¶ 48-55 & 108-158).

This Court has recognized that legal standards are not to be set forth by expert testimony, but, rather, "it is the Court's function to determine the applicable legal standards."  *Lannett Co. v. Kv Pharm.*, No. 08-338-JJF, 2009 U.S. Dist. LEXIS 134178, at *10 (D. Del. Mar. 9, 2009).  In cases involving inequitable conduct, "[i]t is not necessary to have an expert educate a judge about the duty of candor or about the handling of patent applications by the patent office."  *Wisconsin Alumni Research Foundation v. IBM Corp.*, 04-C-867-C, 2005 U.S. Dist. LEXIS 36845, at *2 (W.D. Wis. Aug. 29, 2005) (excluding expert testimony regarding inequitable conduct).  Mr. Godici offers opinions of the very type that have been squarely rejected as impermissible under Rule 702.  He sets forth the standard for finding inequitable conduct, as established by the Federal Circuit in *Therasense Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc).  Ex. H, Godici Opening Report ¶¶ 48-55.  He then purports to apply that legal framework to the facts of this case.  *Id.*  ¶¶ 108-158.  Mr. Godici states:



███████████████████████████

█ ████████████████████████████████████
████████████████████████████████████

This type of "legal framework" testimony is inappropriate because "the issues of fact underlying the issue of inequitable conduct are not jury questions" and this Court is well equipped to assess the underlying facts as they relate to the legal framework.  *See Power Integ., Inc. v. Fairchild Semiconductor Int'l, Inc.*, 763 F. Supp. 2d 671, 686 (D. Del. 2010) (citation omitted). Under similar circumstances, the Eastern District of Texas aptly excluded Mr. Godici's testimony:

> In his report, Mr. Godici lays out Federal Circuit law on the issue of inequitable conduct and then suggests how to apply this law to facts about which he has no personal knowledge.  It is for the court or the jury to make these factual findings and apply the law, not for Mr. Godici to tell either the court or the jury how to do so.

*Barry v. Medtronic, Inc.*, No. 1:14-cv-104, at 7 (E.D. Tex. Sept. 21, 2016) (Ex. S); *see also Whitewater West Indus. v. Pac. Surf Designs, Inc.*, No. 3:17-01118-BEN, 2019 U.S. Dist. LEXIS 86340, at *33 (S.D. Cal. May 22, 2019) (excluding Mr. Godici's testimony as "an improper attempt to offer an opinion of a legal expert about inequitable conduct, intent, and what the examiner would have done had the circumstances been different").

Mr. Godici – apparently aware of the court's general prohibition against such legal framework opinion, and the previous exclusions of his efforts to give such testimony – ██████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████ In

- 18 -

barring the opinions of Mr. Godici, this court previously rejected this very same attempt to "paint" his improper legal opinion testimony as "PTO practices and procedures." *W.L. Gore*, 2015 WL 12815314, at *5. His opinions are "akin to a legal brief" and should be excluded. *St. Jude Medical, et al. v. Volcano Corp.*, No. 10-631-RGA, at 1 (D. Del. June 15, 2012) (Ex. U).

> **2.    Mr. Godici's Opinions Impermissibly Undermine the Presumption of Validity (Opening Report ¶¶ 20-22, 36, 155).**

In his Opening Report, Mr. Godici emphasizes the PTO's limited resources, the "real-life constraints" on examiners' time, and notes that examiners can make mistakes:



Patents are entitled to a presumption of validity.  35 U.S.C. § 282.  Mr. Godici is not

permitted to undermine this bedrock legal principle.  In fact, Mr. Godici's testimony was recently excluded on grounds that it would undermine the jury's confidence in the PTO.  *Comm. Scientific and Indus. Research Org. v. Mediatek Inc.*, No. 6:12-cv-00578-RWS, 2015 WL 12806515, at *5 (E.D. Tex. June 29, 2015).  The Eastern District of Texas precluded Mr. Godici's "attack" on the statutory presumption of validity, finding his "testimony on quotas, mistakes at the PTO, average number of hours worked on applications, and limited resources, all offered to emphasize that the PTO has limited ability to grant valid patents, is highly prejudicial."  *Id.*  This reasoning applies squarely here.  *See also Bausch & Lomb, Inc.*, 79 F. Supp. 2d at 155-156 (purported testimony about "problems in the PTO" was an improper attempt to "undermine the presumption of validity").  Accordingly, Mr. Godici's opinions presented in ¶¶ 20-22, 36, and 155 undermining the presumption of validity should be stricken.

### 3. Mr. Godici's Testimony Regarding PTO Procedures Will Not Assist the Court as Trier of Fact (Opening Report ¶¶ 17-47).

To the extent Mr. Godici does set forth opinions on PTO practices and procedures, they are at ¶¶ 17-47 of his Opening Report.  Although courts may "at times permit[] testimony [that] clearly relate[s] to the ins and outs of internal PTO practices and procedures," such testimony is only permitted if it would be particularly relevant or helpful.  *W.L. Gore*, 2015 WL 12815314, at *3; *see also AstraZeneca*, 2012 WL 6043266, at * 2 (excluding testimony of former PTO examiner regarding "procedures at the PTO" as it "w[ould] not be helpful to the Court"); *Corning Inc. v. SRU Biosystems*, C.A. No. 03-633 JJF, 2004 WL 5523178, at *1 (D. Del. Nov. 5, 2004) (excluding patent law expert's testimony which "deal[t] primarily with internal patent office procedures").

Mr. Godici's explanation of PTO procedure (¶¶ 17-47) is not particularly relevant or helpful in this case, particularly where inequitable conduct is an equitable issue for the Court. █

██████████████

████████████████████████████████████

██████████████████████████    This background information is not

specifically relevant to any claim in this case, is not helpful to this Court, and should be excluded.

*See St. Jude*, No. 10-631-RGA, at 1 (Ex. U) (excluding report "about practices and procedures

before the USPTO" because it "would not assist the trier of fact.").

> **4.    Mr. Godici's Summary of The File Histories Is Not Helpful (Opening Report ¶¶ 56-107).**

Mr. Godici also spends a significant portion of his Opening Report (¶¶ 56-107) providing

a self-serving recitation of selected excerpts from the prosecution history of the patents in suit.

But "in th[e District of Delaware,] parties are generally not permitted to explain patent prosecution

histories through expert testimony." *Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*,

No. 08-464, 2010 U.S. Dist. LEXIS 995598, at *5 (D. Del. Sept. 21, 2010); *see also Bausch &

Lomb*, 79 F. Supp. 2d at 256 (explaining the Court saw "no need" for expert's testimony outlining

prosecution history as defendant could elicit such testimony from plaintiff's fact witnesses).

Expert narration of undisputed facts – such as those in ¶¶ 56-107 of Mr. Godici's Opening Report

- "waste[s] time and . . . unfairly prejudice[s]" Shire. *F'real Foods LLC v. Hamilton Beach Brands,

Inc.*, No. 16-41-CFC, 2019 U.S. Dist. LEXIS 62202, at *3-4 (D. Del. Apr. 11, 2019) ("facts should

be presented through fact witnesses and/or documents").[11]

---

[11]   Mr. Godici's explanation of the prosecution histories are not full recitations, but instead only selective citations to portions of them that serve CSL's arguments in this case. *Contra W.L. Gore*, 2015 WL 12815314, at *7 (permitting expert's "summary of prosecution history"). ████████████████████████████████████████████████████████████████████████████████████████████████    Mr. Godici's testimony would therefore be unhelpful and will be duplicative as the Court will hear from CSL directly which aspects of the prosecution histories are supportive of CSL arguments.  Therefore, for that additional reason, this testimony should be excluded.



**F.      Dr. Christine Meyer's Opinions Are Not Based on Sufficient Facts or Data.**

The Court should preclude CSL's damages expert, Dr. Meyer, from offering opinions, including the entirety of her lost profits opinions, presented in ¶¶ 37-40, 54, 58, 104-05, 121(a), 130-151, Exs. 3, 4(a)-(b), 7(b)-(d), (f), 8(b)-(e), (g), 9(b)-(e) and (g), and Figs. 1-3, 5 of her Report, because those opinions do not withstand the basic test of reliability.[12]

. But Dr. Meyer did not verify the data nor confirm (or even inquire about) the reliability of the data collection process or results.  Expert testimony must be based on sufficient facts or data and be the product of reliable principles and methods, with the burden of proof on reliability resting with the party offering the expert evidence.  *See* Fed. R. Evid. 702 & advisory committee's note to 2000 amendment.

.[13]

_____

[12]

[13]

*See B. Braun Melsungen AG v. Teramo Med. Corp.*, 749 F. Supp. 2d 210, 221 (D. Del. 2010) (identifying six "*Pennypack*" factors to consider in determining whether a failure to disclose was harmless) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977), overruled on other grounds by *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985)).  Courts applying the *Pennypack* factors have been "more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied" in the case of sophisticated, complex litigation.  *Bridgestone Sports Co. Ltd v. Acushnet Co.*, No. 05-132-JJF, 2007 U.S. Dist. LEXIS 11380, at *11 (D. Del. Feb. 15, 2007).

██████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████.  Dr. Meyer did not rely on (nor has

CSL produced) any actual data, collection reports, or other information underlying the excel file

and PowerPoint presentation.  █████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████ █ ████████████

—————————————————

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████  The Court should exclude Dr.

Meyer's lost profits opinions for this additional reason.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████  Because Dr. Meyer



*See, e.g.*, *Mosaid Techs. Inc. v. LSI Corp.*, 2014 U.S. Dist. LEXIS 25840, at *10 (D. Del. Feb. 28, 2014) (excluding expert testimony as unreliable where expert could not verify accuracy or reliability of underlying data); *Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l*, 350 F. Supp. 2d 582, 589-90 (D. Del. 2004) (finding expert  testimony did "not withstand the basic test of reliability" where the expert relied upon a marketing plan without understanding how the data was compiled); *see also Legendary Art, LLC v. Godard,* No. 11-0674, 2012 U.S. Dist. LEXIS 116270 (E.D. Pa. Aug. 17, 2012) (excluding expert testimony as unreliable where the expert relied on projections supplied by counsel without independent verification).[15]

.   The Third Circuit has made clear that "[i]f the data underlying the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded." *See In re TMI Litig.*, 193 F. 3d 613, 697 (3d Cir. 1999); *see also Montgomery County*, 320 F.3d at 448.

---

[15]

- 24 -

[REDACTED]

[REDACTED]:

- [REDACTED]

These reliability issues simply cannot be cured through cross examination, which will unduly prejudice Shire. *Chemipal*, 350 F. Supp. 2d at 592 (excluding testimony which could not be subject to cross-examination); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 145, 147-148 (1999) (district courts serve as "gatekeepers" to protect juries from unduly prejudicial evidence).

Thus, the Court should exclude Dr. Meyer's damages opinions found in ¶¶ 37-40, 54, 58, 104-05, 121(a), 130-151, Exhibits 3, 4(a)-(b), 7(b)-(d), (f), 8(b)-(e), (g), 9(b)-(e) and (g), and Figures 1-3, 5 of her Responsive Report as they are based on the unverifiable [REDACTED], do not meet the standards of reliability required by Rule 702, and constitute unreliable double hearsay.

[REDACTED]

## IV.    CONCLUSION

Shire respectfully requests that the impermissible opinions of Mr. Lassman, Dr. Craig, Dr. Illum, Mr. Godici, and Dr. Meyer be excluded at summary judgment and trial, and those opinions be stricken from the offending expert report.

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

*/s/ Karen Jacobs*

OF COUNSEL:

Eric J. Marandett
Daniel C. Winston
G. Mark Edgarton
Anita M. C. Spieth
Bryana T. McGillycuddy
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

Edgar H. Haug
HAUG PARTNERS LLP
745 Fifth Avenue, 10th Floor
New York, NY 10105
(212) 588-0800


Dated:  April 3, 2020

_____
Karen Jacobs (#2881)
Derek J. Fahnestock (#4705)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com
dfahnestock@mnat.com

*Attorneys for Plaintiff Shire
ViroPharma LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants. I further certify that I caused copies of the foregoing document to be served on April 3, 2020 upon the following in the manner indicated:

John W. Shaw, Esquire                                    *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
David M. Fry, Esquire
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801

Amanda K. Murphy, Esquire                               *VIA ELECTRONIC MAIL*
L. Scott Burwell, Esquire
Thomas J. Sullivan, Esquire
Candice R. Jones, Esquire
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001

yan P. O'Quinn, Esquire                                 *VIA ELECTRONIC MAIL*
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190

Sanya Sukduang, Esquire                                 *VIA ELECTRONIC MAIL*
Jonathan R. Davies, Esquire
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004

Anthony C. Tridico, Esquire                             *VIA ELECTRONIC MAIL*
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
16 Old Bailey
London, EC4M 7EG
United Kingdom

                                        */s/ Derek J. Fahnestock*
                                        Derek J. Fahnestock (#4705)