# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHIRE VIROPHARMA LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 17-414 (MSG) (CONSOLIDATED) |
| v. | ) | |
| | ) | **REDACTED - PUBLIC VERSION** |
| CSL BEHRING LLC and | ) | |
| CSL BEHRING GmbH, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF SHIRE VIROPHARMA LLC'S REPLY BRIEF IN SUPPORT OF ITS _DAUBERT_ MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY AND STRIKE EXPERT REPORTS

OF COUNSEL:

Eric J. Marandett
Daniel C. Winston
G. Mark Edgarton
Anita M. C. Spieth
Bryana T. McGillycuddy
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

Edgar H. Haug
HAUG PARTNERS LLP
745 Fifth Avenue, 10th Floor
New York, NY 10105
(212) 588-0800

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Derek J. Fahnestock (#4705)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com
dfahnestock@mnat.com

Attorneys for Plaintiff Shire ViroPharma LLC

Original Filing Date: May 13, 2020
Redacted Filing Date: May 19, 2020

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

I.      SEVERAL OF DR. CRAIG'S OPINIONS SHOULD BE EXCLUDED. ......................... 1

      A.      Dr. Craig's Non-Infringement Analysis Is Unreliable as It Does Not Fit the Facts of this Case and ███████████████ .................................... 1

      B.      Dr. Craig's Obviousness Opinions Should Be Excluded. ................................. 2

      C.      Dr. Craig's Opinions on Agency Should Be Excluded ..................................... 3

II.     DR. MEYER'S OPINIONS ARE UNRELIABLE UNDER *DAUBERT*. .......................... 4

III.    MR. GODICI'S OPINIONS ARE IMPROPER AND UNHELPFUL. ............................. 6

      A.      Mr. Godici's "Legal Framework" Opinions and Opinions on PTO Practice and Procedure, Should Be Excluded...................................................... 6

      B.      Mr. Godici's Opinions Undermine the Presumption of Validity...................... 8

IV.    MR. LASSMAN IMPROPERLY OPINES ON SHIRE'S INTENT................................. 8

V.     DR. ILLUM IMPROPERLY OPINES ON INVENTORSHIP, OWNERSHIP, AND INTENT. ...................................................................................................... 9

VI.    CONCLUSION........................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alcoa, Inc. v. Alcan Rolled Prods.-Ravenswood LLC*,
2020 U.S. Dist. LEXIS 13695 (D. Del. Jan. 28, 2020)............................................................5

*Apotex, Inc. v. Cephalon, Inc.*,
321 F.R.D. 220 (E.D. Pa. 2017).................................................................................................6

*AstraZeneca UK Ltd., IPR v. Watson Labs., Inc.*,
2012 WL 6043266 (D. Del. Nov. 14, 2012) .............................................................................7

*Bayer Healthcare LLC v. Baxalta Inc.*,
2019 U.S. Dist. LEXIS 11952 (D. Del. Jan 25, 2019)............................................................5

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l*,
350 F. Supp. 2d 582 (D. Del. 2004).....................................................................................5, 6

*Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co.*,
203 F. Supp. 3d 499 (E.D. Pa. 2016) .....................................................................................10

*Corning Inc. v. SRU Biosys.*,
2004 WL 5523178 (D. Del. Nov. 5, 2004) ..............................................................................7

*Dow Chem. Can., Inc. v. HRD Corp.*,
656 F. Supp. 2d 427 (D. Del. 2009).......................................................................................10

*Hess v. Advanced Cardiovascular Sys.*,
106 F.3d 976 (Fed. Cir. 1997).................................................................................................10

*IBM v. Groupon, Inc.*,
2018 U.S. Dist. LEXIS 100333 (D. Del. June 15, 2018)..........................................................8

*Intellectual Ventures I LLC v. Symantec Corp.*,
2015 U.S. Dist. LEXIS 2841 (D. Del. Jan 6, 2015).................................................................8

*Intellectual Ventures I LLC v. Symantec Corp.*,
No. 10-1067-LPS, D.I. 614-2 (D. Del. Jan. 5, 2015)...............................................................8

*Mosaid Techs. Inc. v. LSI Corp.*,
2014 U.S. Dist. LEXIS 25840 (D. Del. Feb. 28, 2014) ...........................................................6

*Oxford Gene Tech., Ltd. v. Mergen Ltd.*,
345 F. Supp. 2d 431 (D. Del. 2004)........................................................................................10

*Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*,
    756 F. Supp. 2d 598 (D. Del. 2010)..........................................................................10

*Sonos, Inc. v. D & M Holdings Inc.*,
    297 F. Supp. 3d 501 (D. Del. 2017)..........................................................................10

*St. Jude Med. v. Volcano Corp.*,
    No. 10-631-RGA, D.I. 239 (D. Del. June 15, 2012)...................................................7

*Syngenta Seeds, Inc. v. Monsanto Co.*,
    2004 U.S. Dist. LEXIS 18712 (D. Del. Sept. 8, 2004)..........................................7, 8

*In re TMI Litig.*,
    193 F. 3d 613 (3d Cir. 1999)......................................................................................4

*Touchcom, Inc. v. Berreskin & Parr*,
    2010 U.S. Dist. LEXIS 115817 (E.D. Va. Oct. 29, 2010).......................................10

*United States v. Davis*,
    397 F.3d 173 (3d Cir. 2005).......................................................................................6

**Statutes**

Fed. R. Evid. 403 ............................................................................................................7

████████████████████████████████████████

## I.    SEVERAL OF DR. CRAIG'S OPINIONS SHOULD BE EXCLUDED.

### A.    Dr. Craig's Non-Infringement Analysis Is Unreliable as It Does Not Fit the Facts of this Case and ████████████████████████.

████████████████████████████████████████████████████████

█████████████████████.  Indeed, CSL, based on its Phase III clinical trials, touts this aspect of Haegarda, claiming that the product "maintain[s] steady-state C1-INH functional levels above 40%" (i.e. 0.4 U/mL).  *See*, *e.g.*, Ex. N, Haegarda Website.  On the basis of this blood level data, CSL obtained FDA approval for and markets its product.  Dr. Craig, however, █████████████████ and adopts an unscientific method of evaluating patient blood levels ████████████████████ ██████████████████████████████  Dr. Craig purports to examine whether patients in the Phase III study achieved blood levels of 0.4 U/mL *between each individual dose* of Haegarda, ████████████████████.[1]

As described in Shire's opening *Daubert* brief (Shire Mem. at 8-9), ██████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████    Just one of the flaws in the method is ██████████████████████ ████████████████████████████████████████████████████████████

---

[1] CSL attempts to create a new claim construction dispute by arguing that the increase to "at least about 0.4 U/mL" must occur after each administration of Haegarda and before a subsequent dose of Haegarda is administered.  *See* D.I. 295 at 6-7 (CSL Resp.).  Such a request is untimely and should be rejected.  In any event, the asserted claims require an increase of C1-INH to "at least about 0.4 U/mL" after administration—they do not require the increase to occur at a specific point after administration.  D.I. 237 at 23-28.  Analyzing infringement dose-by-dose is also inconsistent with the reality of prophylactically treating HAE patients via a subcutaneous route of administration, where the goal is to attain blood levels that prevent attacks.  Because C1-INH is absorbed more slowly through the subcutaneous tissue than through other routes of administration, it may take a few doses to "build" C1-INH in the blood to the claimed levels. *See* CSL Resp. at 6; ███████████████████████████████████████████████████████ ██████████████.  Even if CSL's interpretation of the claim language were correct, Dr. Craig's analysis is not a reliable method of testing dose-by-dose infringement.

███████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████.  This sampling point is obviously irrelevant to the

question of whether administration of Haegarda increases the level of C1-INH in the blood.  ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████  This flawed part of the methodology alone renders the method

unreliable and contrary to the facts of this case, and skews the overall results.

Finally, even assuming this tortured method were a reliable determinant of the claimed

blood levels (which it is not, as explained above and in Shire's opening brief), ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

**B.     Dr. Craig's Obviousness Opinions Should Be Excluded.**

CSL argues that Shire "overstates the significance" of *Gatlin*.  CSL Resp. at 9.  CSL,

however, made *Gatlin* significant (at least to its defense) by pursuing a single obviousness theory

based on just two prior art references: *Gatlin* and *Schranz*.  ████████████████████████

████████████████████████████████████████████████████

█████████████████████████████  ████████████████████████

---

[2] CSL relies on *Gatlin* because *Schranz* alone does not disclose the inventions.  *Schranz* describes a low-concentration formulation of C1-INH and hyaluronidase, a dispersing agent that can increase bioavailability.  *See* Ex. Z, *Schranz* Poster.  *Schranz* teaches away from high-concentration C1-INH by touting favorable results using hyaluronidase to achieve the desired effects.  *Schranz* also does not teach how to create formulations with the claimed pH, stability, and viscosity.



Allowing Dr. Craig to benefit ████████████████████████████████████ by permitting him to testify about it at summary judgment or trial would be highly prejudicial to Shire, ███████████████████████████████████████████████████ ████████████████████.

**C.    Dr. Craig's Opinions on Agency Should Be Excluded.**

In defense of Dr. Craig's opinions on agency, CSL attempts to conflate ██████████ ███████████████████████████████████████████████████████. Unlike

████████████████████████

Shire's experts, ███████████████████████████████████

████████████████████████████████████████████

██████████████████████████████  ████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████  ██

██████████████████

## II.   DR. MEYER'S OPINIONS ARE UNRELIABLE UNDER *DAUBERT*.

CSL tries to avoid the deficiencies in Dr. Meyer's opinions by asserting that "Adivo market analysis data is accepted and widely used."  The problem with Dr. Meyer's opinions, however, is her reliance on the specific and unverified Adivo Data prepared at CSL's request during the course of this litigation. █████████████████████████████████████

████████████████████████████████████ [4]  Thus, her opinions are unreliable and inadmissible.

Dr. Meyer's opinions are unreliable ██████████████████████████████

████████████████████████████████.[5]  For example, ██████████████████

██████████████████████████████████████████████████

---

[4] CSL argues that Shire should have moved to compel production of Adivo data generally at some point prior to receiving Dr. Meyer's report.  *See* CSL Resp. at 24-25.  Shire could not have known, however, that CSL's damages case would rely—almost exclusively—on data from Adivo.  Until reading Dr. Meyer's Report, Shire had no reason to expend the time and resources to move to compel.  CSL should not now be rewarded for intentionally withholding the Adivo Data during fact discovery.  Ex. Y, December 2019 – January 2020 Emails.

[5] CSL does not dispute that the Adivo Data is double hearsay.  *See* CSL Resp. at 22-24.  For this additional reason, the Adivo Data is not evidence on which any reasonable expert may rely, and Dr. Meyer's opinions based on that data must be excluded.  *See In re TMI Litig.*, 193 F. 3d 613, 697 (3d Cir. 1999) ("[i]f the data underlying the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded.").

███████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████   This is a critical distinction, as only long-term prophylactic use is relevant

in this case.   ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████    ████████████

████████.   Dr. Meyer's ████████████████████████   not only renders her

opinions unreliable but also prevents Shire from cross-examining her regarding the data.  *See*,

*e.g.*, *Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l*, 350 F. Supp. 2d 582, 592 (D. Del. 2004)

(excluding testimony where the validity could not be tested through cross-examination).[6]

Further, contrary to CSL's suggestion (*see* CSL Resp. at 20), there is no requirement to

explicitly evaluate the eight factors set forth in *Alcoa, Inc. v. Alcan Rolled Prods.-Ravenswood

LLC*, 2020 U.S. Dist. LEXIS 13695 (D. Del. Jan. 28, 2020).  The Third Circuit has recognized

that this "list of specific factors would often be of little use in evaluating non-scientific expert

testimony." *United States v. Davis*, 397 F.3d 173, 178 (3d Cir. 2005).  Using this logic, the court

routinely evaluates the admissibility of economic expert testimony without reference to these

---

[6] CSL's citation to *Bayer Healthcare LLC v. Baxalta Inc.* does not support the reliability of Dr. Meyer' opinions.  2019 U.S. Dist. LEXIS 11952 (D. Del. Jan. 25, 2019).  In *Bayer*, the court was not asked to consider the expert's reliance on data gathered by Adivo.  *Id.* at *16-25. Instead, the court's opinion regarding the reliability of the expert's testimony focused on separate aspects of the expert's methodology.  Moreover, the reliance by a different expert on different Adivo data does not cure the deficiencies of Dr. Meyer's reliance here.

eight factors. *See*, *e.g.*, *Mosaid Techs. Inc. v. LSI Corp.*, 2014 U.S. Dist. LEXIS 25840, at *10 (D. Del. Feb. 28, 2014) (excluding economic expert testimony as unreliable without analyzing eight factors set forth by CSL); *Chemipal*, 350 F. Supp. 2d at 589-90 (same).

Even applying CSL's desired analysis, Dr. Meyer's testimony is unreliable. CSL points only to the first, fourth, fifth, sixth, and eighth factors. *See* CSL Resp. at 20-22. As to the first, fifth, and sixth factors, CSL asserts that economists typically consider "actual marketplace data, such as the Adivo data" to be the "best source of information of consumer demand." CSL Resp. at 21. There is no evidence— ███████████████ —for Dr. Meyer to conclude that the specific Adivo Data on which she relies is in fact ████████████ *Id.* Rather, it is an assortment of data collected by a third party from unknown sources during this litigation. Regarding the fourth factor, as addressed above, ███████████████████████ ███████████████████ Finally, as to the eighth factor, CSL notes that it has used data from Adivo *generally*, but has no evidence suggesting the Adivo Data at issue here is reliable.[7]

## III.   MR. GODICI'S OPINIONS ARE IMPROPER AND UNHELPFUL.

### A.   Mr. Godici's "Legal Framework" Opinions and Opinions on PTO Practice and Procedure, Should Be Excluded.

Mr. Godici's assertions notwithstanding, his testimony is not made proper simply by his own inaccurate characterization of the opinions as something other than "legal opinion." Not only is Mr. Godici barred from providing "legal opinions" on the ultimate question of inequitable conduct, but he is similarly barred from setting out the "legal framework" for a finding of inequitable conduct. Ex. H, Godici Opening Report ¶¶ 48-55, 108-158. CSL cites no case law

---

[7] *Apotex, Inc. v. Cephalon, Inc.*, 321 F.R.D. 220 (E.D. Pa. 2017), is inapposite. Unlike Dr. Meyer, the expert in *Apotex* and/or his staff communicated with Apotex, the company that actually created the projections at issue, and sought to obtain a thorough understanding of the data. *Id.* at 234.

████████████████████████████████

to the contrary.  And while this District has occasionally permitted expert testimony regarding

PTO practices and procedures, it is particularly skeptical of such testimony.[8]  For example,

former Judge Robinson's guidelines explicitly barred "expert testimony . . . regarding patent

practice and procedure . . . except in the case of extraordinary circumstances."  *Syngenta Seeds,*

*Inc. v. Monsanto Co.*, 2004 U.S. Dist. LEXIS 18712, at \*4 (D. Del. Sept. 8, 2004).  CSL has not

offered anything "extraordinary" about this case that would require explanation.

Although the court, on occasion, may allow experts to summarize the prosecution history

of the asserted patents, Mr. Godici's ██████████████████████████ is not the type of

summary typically allowed.  *See* Fed. R. Evid. 403; Ex. H, Godici Opening Report Section IV.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████  His ████████████ is particularly problematic given his

opinions concern inequitable conduct: whether material information was withheld from or

disclosed to the PTO.  Accordingly, he cannot provide a complete ████████████████████

██████████████████████████████████.

---

[8] In fact, this court often excludes expert testimony on PTO practices and procedures as unhelpful or unnecessary.  *See AstraZeneca UK Ltd., IPR v. Watson Labs., Inc.*, 2012 WL 6043266, at \*2 (D. Del. Nov. 14, 2012); *St. Jude Med. v. Volcano Corp.*, No. 10-631-RGA, D.I. 239, at 1 (D. Del. June 15, 2012); *Corning Inc. v. SRU Biosys.*, 2004 WL 5523178, at \*1 (D. Del. Nov. 5, 2004).

███████████████████████████████████

### B.  Mr. Godici's Opinions Undermine the Presumption of Validity.

CSL does not dispute that Mr. Godici is barred from undermining the presumption of patent validity.  Instead, CSL argues that "Delaware has allowed experts to provide testimony 'consistent with what the jury will learn from the Federal Judicial Center video.'"  CSL Resp. at 18.  The expert testimony at issue here goes beyond the FJC patent video, and is substantially more prejudicial.[9]  First, it comes from a party expert, rather than a neutral source.  *See Syngenta Seeds*, 2004 U.S. Dist. LEXIS 18712, at *4-5 (choosing to show FJC video instead of allowing expert testimony).  ██████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████.  CSL has not sought to admit the FJC patent video as evidence, nor has CSL offered to limit Mr. Godici's testimony to the words of the patent video.  Accordingly, Mr. Godici should be precluded from offering opinions that undermine the presumption of validity.

## IV.  MR. LASSMAN IMPROPERLY OPINES ON SHIRE'S INTENT.

Shire retained Suzanne Sensabaugh, a regulatory affairs expert with over 30 years of FDA experience, to provide objective opinions regarding ████████████████████████ ██████████████████████  CSL, on the other hand, chose not to retain a regulatory affairs expert, but instead retained a regulatory attorney to provide subjective opinions regarding Shire's intent, motive, and state of mind.  In a misguided attempt to save Mr. Lassman's

---

[9] In fact, the court in *IBM v. Groupon, Inc.* stated that "neither party [would] be permitted to disparage the PTO" and that the plaintiff could not "elicit disparaging comments about the PTO."  2018 U.S. Dist. LEXIS 100333, at *2 & n.2 (D. Del. June 15, 2018).  In *Intellectual Ventures*, the Court held that evidence "track[ing]" the patent video was acceptable but barred other evidence regarding whether "examiners are overworked," etc.  Ex. AA, *Intellectual Ventures I LLC v. Symantec Corp.*, No. 10-1067-LPS, D.I. 614-2, at 242 (D. Del. Jan. 5, 2015); *see Intellectual Ventures I LLC v. Symantec Corp.*, 2015 U.S. Dist. LEXIS 2841, at *4 (D. Del. Jan 6, 2015).

████████████████████████████████████████

improper opinions, CSL keys off one word in Ms. Sensabaugh's report ("position") and now

incorrectly asserts that Mr. Lassman ████████████████████████████████████████████

██████████████████████████████████████████████████    ████████████████████

Ms. Sensabaugh, however, only offered testimony about the status (i.e., position) of ██████

████████████████████████    Ms. Sensabaugh did not offer any opinion or even factual

characterization regarding Shire's prioritization of products.

CSL next claims that Mr. Lassman ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████ nor

does CSL cite any case law supporting the relevance of any such alleged distinction.  Semantics

aside, CSL cannot escape the fact that Mr. Lassman ███████████████████████████████

████████████████████████████████████████████████████████.[10]

Further, although CSL asserts that ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████    ████

████████████████    The fact remains that Mr. Lassman is an attorney whom CSL seeks to have

offer impermissible legal opinions from the witness stand.

## V.   DR. ILLUM IMPROPERLY OPINES ON INVENTORSHIP, OWNERSHIP, AND INTENT.

CSL repackages Dr. Illum's improper legal opinions as providing the "technical

predicate[s]" for inventorship.  CSL Resp. at 14.  But simply calling the testimony "technical"

does not change its nature: Dr. Illum expressly and improperly concludes,  ████████████████

---

[10] ██████████████████████████████████████████████████████████████████████



. Beyond providing an improper legal opinion,

Dr. Illum apparently ███████████████████████████████████, including

Shire's own "extensive research and development work that produced the [inventions]." *Hess v.*

*Advanced Cardiovascular Sys.*, 106 F.3d 976, 981 (Fed. Cir. 1997). ████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████ *Hess*,

106 F.3d at 980 ("The inventors as named in an issued patent are presumed to be correct.")

(quotations omitted). Her testimony about inventorship therefore is unfounded and improper.[11]

Further, █████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████ Her unqualified opinions as to the "legal duties . . . arising from a contract"

are undoubtedly improper. *Dow Chem. Can., Inc. v. HRD Corp.*, 656 F. Supp. 2d 427, 435-36

(D. Del. 2009).[12] █████████████████████████████████████████████

████████████████████████████████████████████████████████

*see Oxford Gene Tech., Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 & n.9 (D. Del. 2004).

---

[11] Neither of the cases cited by CSL is on point. *See Touchcom, Inc. v. Berreskin & Parr*, 2010 U.S. Dist. LEXIS 115817, at *16-18 (E.D. Va. Oct. 29, 2010) (considering whether expert's statements about witness credibility tainted inventorship opinions); *Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 511-12 (D. Del. 2017) (not addressing inventorship but excluding expert's secondary considerations testimony that "merely stated ultimate conclusions").

[12] Again, CSL's cited cases demonstrate the inadmissibility of Dr. Illum's legal interpretation of the Sanquin/Shire agreement, as the courts found those experts did not offer legal opinions. *See Roche Diagnostics Op., Inc. v. Abbott Diabetes Care*, 756 F. Supp. 2d 598, 606 (D. Del. 2010); *Comcast Cable Commc'ns v. Sprint Commc'ns*, 203 F. Supp. 3d 499, 546 (E.D. Pa. 2016).

## VI.    CONCLUSION

For the foregoing reasons, Shire respectfully requests that the Court grant its *Daubert*

motion and exclude CSL's improper expert testimony.

OF COUNSEL:

Eric J. Marandett
Daniel C. Winston
G. Mark Edgarton
Anita M. C. Spieth
Bryana T. McGillycuddy
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

Edgar H. Haug
HAUG PARTNERS LLP
745 Fifth Avenue, 10th Floor
New York, NY 10105
(212) 588-0800

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

*/s/ Karen Jacobs*
_____
Karen Jacobs (#2881)
Derek J. Fahnestock (#4705)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com
dfahnestock@mnat.com

*Attorneys for Plaintiff Shire
ViroPharma LLC*

Dated:  May 13, 2020

- 11 -

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 13, 2020, upon the following in the manner indicated:

John W. Shaw, Esquire                                   *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
David M. Fry, Esquire
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801

Amanda K. Murphy, Esquire                               *VIA ELECTRONIC MAIL*
Thomas J. Sullivan, Esquire
Candice R. Jones, Esquire
Douglas W. Cheek, Esquire
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001

Ryan P. O'Quinn, Esquire                                *VIA ELECTRONIC MAIL*
L. Scott Burwell, Esquire
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA  20190

Anthony C. Tridico, Esquire                             *VIA ELECTRONIC MAIL*
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
16 Old Bailey
London, EC4M 7EG
United Kingdom

Sanya Sukduang, Esquire                                          *VIA ELECTRONIC MAIL*
Jonathan R. Davies, Esquire
COOLEY LLP
1299 Pennsylvania Ave, NW
Suite 700
Washington, DC 20004

*/s/ Karen Jacobs*

_____
Karen Jacobs (#2881)